**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONALD WORTHINGTON** <br><br> v. <br><br> **CHESTER DOWNS AND MARINA, LLC, OWNER/LICENSEE OF HARRAH'S PHILADELPHIA d/b/a HARRAH'S PHILADELPHIA CASINO AND RACETRACK** | **CIVIL ACTION** <br><br> **NO. 17-1360** |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                                                         **August 11, 2017**

## I.      Introduction

Plaintiff Donald Worthington ("Plaintiff") brings this action against Defendant Chester Downs and Marina LLC, Owner and Licensee of Harrah's Philadelphia Casino and Racetrack ("Defendant"), alleging six claims:

1. (Count I) Disability Discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*., ("ADA");

2. (Count II) Retaliation pursuant to the ADA;

3. (Count III) Disability Discrimination pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq*., ("PHRA");

4. (Count IV) Retaliation pursuant to the PHRA;

5. (Count V) Retaliation & Interference pursuant to the Family Medical Leave Act, 29 U.S.C. § 2611, *et seq*., ("FMLA"); and

6. (Count VI) Wrongful Discharge pursuant to Pennsylvania common law

(ECF 8, First Amended Complaint, "FAC").

1

On June 21, 2017, Defendant moved to dismiss the FAC in its entirety; namely, Counts III and IV for lack of subject matter jurisdiction[1], pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1), and Counts I, II, V, and VI for failure to state a claim, pursuant to FRCP 12(b)(6). (ECF 10, Defendant's Motion to Dismiss, "Def.'s Mot."). On July 5, 2017, Plaintiff filed his Opposition, (ECF 11, Plaintiff's Opposition to Defendant's Motion to Dismiss, "Pl.'s Opp'n"), to which Defendant filed a Reply that same day (ECF 12, "Def.'s Reply").[2]

For the reasons explained below, Defendant's motion will be GRANTED as to Counts I and III, without prejudice, and with leave to amend, and DENIED as to Counts II, IV, V, and VI.

## II.     Factual Background

Plaintiff was employed by Defendant as a "Dealer" from approximately April 28, 2011 to July 6, 2016, and maintained a satisfactory job performance throughout his employment. (FAC ¶ 12). Plaintiff alleges that after he reported another Dealer, Alan Glassman, to Defendant for a violation of their "Toke Committee bylaws," Glassman began harassing and verbally abusing him. (Id.). On June 12, 2016, approximately six months after the harassment began, Plaintiff reported to Carolyn Rinaldo, a manager, that Glassman signed Defendant's "early-out list" several minutes before he was permitted to do so. (Id. ¶ 15). In retaliation, Plaintiff alleges that

---

[1]     We reject at the outset the contention that the Court does not have subject matter jurisdiction over the PHRA claims (Count III and IV) because Plaintiff exhausted his EEOC and PHRA administrative remedies before filing his original complaint. (FAC ¶ 6); see Mandel v. M & Q Packaging Corp., 706 F.3d 157, 163 (3d Cir. 2013) ("To exhaust, a plaintiff must file a charge of discrimination with the EEOC and receive a right-to-sue notice from the EEOC."). The EEOC Right-to-Sue notice was filed on December 27, 2016, and Plaintiff filed his original complaint in this Court on March 27, 2017. (FAC at 1). Therefore, Plaintiff did not overlap any PHRA jurisdiction with that of federal subject matter jurisdiction, and this Court can consider his PHRA claims.

[2]     On July 14, 2017, the Court granted Plaintiff's motion for leave to file a Surreply (see ECF 13, 14), which the Court has considered in deciding the instant motion.

2

"Glassman pushed [him]," and that several employees, including Shanice Flournoy and Kristine Ferioli, witnessed the altercation. (Id.)

As a result of the incident with Glassman, Plaintiff alleges that he experienced shoulder pain and numbness in his hand so, with the permission of Bill Totten, Plaintiff's Shift Manager, he visited the hospital emergency room. (Id. ¶ 16). Upon arrival, Plaintiff told the hospital that his injury was "work related" and the emergency room physician completed a Workers' Compensation Injury Report. (Id. ¶ 17). Plaintiff was then diagnosed with "Brachial Plexus Injury and Shoulder Strain," which, Plaintiff alleges, cause "limited range of motion, numbness in the arms, and hand, and diminished hand strength," and "substantially impair" Plaintiff's major life activities. (Id. ¶¶ 17-18). Plaintiff alleges that, upon discharge, he was "referred to a physical therapist and orthopedist for further evaluation." (Id.).

On June 14, 2016 Plaintiff completed an incident report with Tim Kreischer, a Labor Relations Manager, Hennarie Trivuiano, an Assistant Shift Manager, and Veronica Durham, a Risk Manager. (Id. ¶ 19). Plaintiff alleges he disclosed his diagnosis to those individuals, and that thereafter, Defendant perceived him as disabled. (Id.). Plaintiff also alleges that during this meeting, he expressed to Kriescher, Trivuiano, and Durham his intent to file a claim for workers' compensation benefits, but that Kriescher stated in response that Plaintiff's injury was not work related, such that he was ineligible for worker's compensation benefits. (Id. ¶ 20).

On June 15, 2016 Plaintiff requested a six-month medical leave of absence, pursuant to the FMLA, which was approved and became effective immediately. (Id. ¶ 22).

On July 6, 2016—three weeks after his FMLA leave commenced—Defendant terminated Plaintiff's employment, citing the June 12, 2016 incident with Glassman as the reason. (Id. ¶ 23). Plaintiff alleges, by contrast, that the reason for his termination was his "actual and/or

perceived disabilities and/or record of impairment," in retaliation for his request for FMLA medical leave, and for his expression of intent to file a claim for worker's compensation benefits. (Id. ¶ 24).

## III.   Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), "we accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (Id. at 678) (citing Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n.3). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint may be dismissed under Rule 12(b)(6) for failure to exhaust administrative remedies if the plaintiff does not submit a complaint to the EEOC or relevant state agency and

4

obtain a right-to-sue letter, because both actions are prerequisites to filing suit under Title VII. Robinson v. Dalton, 107 F.3d 1018, 1022 (3d Cir. 1997). In considering a motion to dismiss on these grounds, a court may consider the EEOC administrative record without converting the motion into one for summary judgment. Concha v. Perfecseal, Inc., No. CIV.A. 13-5709, 2014 WL 4634965, at *1 (E.D. Pa. Sept. 15, 2014).

## IV. Discussion

### A. Count I: ADA Disability Discrimination

Defendant first argues that Plaintiff has failed to state a claim for ADA disability discrimination. (Def.'s Mot. at 5). To state a claim for discrimination under the ADA, a plaintiff must show: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996); see also Ostrowski v. Con-Way Freight, Inc., 543 Fed. App'x 128, 130 (3d Cir. 2013).[3] A "disability" is defined by the ADA as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having

---

[3] The Court will consider Count III (PHRA discrimination) with Count I because the test for disability discrimination is the same under the ADA and PHRA. See Bialko v. Quaker Oats Co., 434 Fed. App'x 139, 142 (3d Cir. 2011) ("The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds."); see also Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2012) (holding that the ADA and the PHRA are "to be interpreted consistently," and that both "have the same standard for determination of liability").

5

such an impairment." 42 U.S.C. § 12102(2); Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 305–06 (3d Cir. 1999).

Defendant argues that Plaintiff has failed to satisfy the first prong of the ADA discrimination test –that he is a "disabled person"– within the meaning of the ADA. (Def.'s Mot. at 5). Defendant argues that Plaintiff's allegations merely list symptoms that Brachial Plexus Injury and Shoulder Strain *generally* cause, rather than allege facts to establish that his alleged diagnosis actually limited *him* or constituted a substantial limitation in *his* major life activities. (Id.).

Plaintiff contends, by contrast, that he sufficiently alleged that he is a "disabled person" because he alleged that Brachial Plexus Injury and Shoulder Strain impede two major life activities: lifting and grasping things. (Pl.'s Opp'n at 9; FAC ¶ 18). Plaintiff argues that "it is abundantly clear Plaintiff experienced the same [symptoms], as he pled he was diagnosed with the very conditions that cause said symptoms." (Pl.'s Opp'n at 11).

The Court finds that Plaintiff's allegations, though general, are sufficient at this stage to satisfy the "disabled person" prong of his ADA claim. Courts in this District frequently find these kinds of "bare-boned" allegations sufficient to state a claim under the ADA. See, e.g., Hudson v. Catch, Inc., No. CV 16-2032, 2016 WL 8716462, at *5 (E.D. Pa. Oct. 7, 2016) (finding the plaintiff's allegations that he suffered from "a form of PTSD" and that he had "trouble sleeping, [and] starting smoking cigarettes[,]" albeit "bare-boned," sufficient to satisfy the "disabled person" prong); Alifano v. Merck & Co., 175 F. Supp. 2d 792, 797 (E.D. Pa. 2001) (concluding that Plaintiff had sufficiently satisfied the "disabled person" element of her ADA claim by simply stating her physical impairment, fibromyalgia and chronic fatigue, and listing a few of her symptoms, including body aches and pains, headaches, and lightheadedness); cf

6

Hughes v. City of Bethlehem, 294 Fed. App'x 701, 705 (3d Cir. 2008) (dismissing Plaintiff's ADA claims for failure to demonstrate she was a disabled person after presenting *no* evidence of *any* limitation her Type II Diabetes caused on her daily life.).

To state a claim under the ADA, Plaintiff must also adequately allege facts to support the third prong, that "he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul, 134 F.3d at 580. Adverse employment actions include "[n]ot only adverse actions motivated by prejudice and fear of disabilities, but also include failing to make reasonable accommodations for a plaintiff's disabilities." Taylor, 184 F.3d at 306. As the Third Circuit has recently held, and both parties recognized, a request for FMLA medical leave "may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA[.]" Capps v. Mondelez Global LLC, 847 F. 3d 144 (3d Cir. 2017); (Def.'s Mot. 11; Pl.'s Opp'n at 10).

Defendant argues that Plaintiff failed to adequately allege the third element of his ADA claim because he failed to allege any facts—such as Defendant's "thoughts on or reactions to his [Plaintiff's] alleged 'disability'"—to establish that the adverse employment action, Plaintiff's termination, was a *result of* his disability. (Def.'s Mot. at 9).

Plaintiff argues that he adequately alleged that his termination severed his six-month FMLA medical leave prematurely, and constituted a failure to accommodate his disability. Specifically, Plaintiff contends, "Defendant's claim that it accommodated Plaintiff's request for a reasonable accommodation by providing [Plaintiff] **less than one sixth** of the leave requested and terminating his employment for utilizing said leave is simply insufficient." (Pl.'s Opp'n at 11).

Preliminarily, the Court agrees, as the parties acknowledge, that Plaintiff's termination while on FMLA leave may constitute a failure to reasonably accommodate a disability which, in turn, can constitute an "adverse employment action," within the meaning of the ADA. Capps, 847 F. 3d at 155. However, the Court finds that Plaintiff has still failed to establish the third element of his ADA discrimination claim because he does not allege any facts to show that the alleged "adverse employment action"—his termination—was "a result of discrimination" rather than due to Plaintiff's altercation with Glassman.

While the ADA prevents an employer from discharging an employee based on his or her disability, "[a]n employer is not liable . . . for terminating an employee during . . . his FMLA leave when the reason for termination is not related to the employee's use of FMLA." Spring v. Sealed Air Corp., 483 Fed. App'x 765, 768–69 (3d Cir. 2012). This is true "even if that misconduct is related to his disability." Reinhart v. Mineral Techs. Inc., No. CIV.A. 05-4203, 2006 WL 4050695, at *9 (E.D. Pa. Nov. 27, 2006). Here, Plaintiff has failed to allege that his termination was "a result of his disability." Here, the FAC is insufficient because Plaintiff, at most, alleges that his termination was somehow "related to" his disability—in that his altercation with Glassman caused his alleged disability— rather than because of his disability.

Accordingly, Defendant's motion to dismiss Count I will be granted, without prejudice and with leave to amend.

### B. Count II: ADA Retaliation

Defendant also moves to dismiss Count II of Plaintiff's Complaint, which alleges that Defendant retaliated against Plaintiff for exercising his rights under the ADA. (Def.'s Mot. at 12; FAC ¶ 28).

To state a claim for retaliation under the ADA, "the plaintiff must show: (1) he engaged in an ADA protected activity, (2) he suffered an adverse employment action by the defendant employer (before or after the protected activity), and (3) there is a causal connection between the protected activity and the adverse employment action." Kaniuka v. Good Shepherd Home, 05-CV-02917, 2006 WL 2380387 at *5; see Henderson v. Edens Corp., No. 09-cv-1308, 2015 WL 4977189 at *9 (E.D. Pa. Aug. 20, 2015) (Baylson, J.).

To establish the third element of an ADA retaliation claim, a plaintiff must prove, "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Defendant argues that Plaintiff's retaliation claims fails two-fold: (1) because his allegation that he engaged in a "protected activity" by requesting FMLA leave is "vague and conclusory" (Def.'s Mot. at 12-13); and (2) because he fails to allege facts that would establish a causal connection between any alleged protected activity and the "adverse action,", i.e. his termination. (Id.). Specifically, Defendant avers that the "temporal proximity" between Plaintiff's FMLA request and his termination is insufficient because the three-week gap is not "unduly suggestive" of retaliation. (Def.'s Mot. at 13). Additionally, Defendant argues, Plaintiff does not allege any other facts that would show a causal connection, such as any negative comments from decision makers, a culture against FMLA leave, or a pattern of antagonism against FMLA leave requests or to Plaintiff personally. (Id.).

Plaintiff contends, by contrast, that all elements of his ADA retaliation claim are satisfied. First, the "protected activity" he engaged in was his request for a reasonable accommodation, a six-month medical leave of absence pursuant to the FMLA. (Pl.'s Opp'n at 11). As for the

causal connection, Plaintiff argues that courts in this Circuit have yet to set a bright-line rule as to how close in time the alleged protected activity and adverse action must be to be "unduly suggestive" of retaliation,  (id. at 12), and that three weeks is sufficiently proximate to state his claim.  (Id. at 13).

Initially, it is clear that Plaintiff satisfied the first element of his ADA retaliation claim by alleging that he requested a six-month FMLA medical leave request.  (FAC ¶ 22); see Jackson v. J. Lewis Crozer Library, 445 Fed. App'x 533, 536–37 (3d Cir. 2011) ("An employee's request for reasonable accommodation is an ADA protected activity."); see also Keiffer v. CPR Restoration & Cleaning 200 F. Supp. 3d 520, 536 (E.D. Pa. Aug. 3, 2016) (finding "a good faith request for reasonable accommodation is a protected activity.").

As to the third element, notwithstanding Defendant's contention to the contrary, the Court will not conclude, as a matter of law, that the three weeks between Plaintiff's commencement of his FMLA leave time and termination was insufficiently proximate such that it could not be "unduly suggestive" of retaliation.  (Pl.'s Opp'n at 12; FAC ¶ 22-23). As Defendant concedes, the Third Circuit does not have a bright line rule as to what length of time is "unduly suggestive."  (Def.'s Mot. at 13); see LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) ("[t]here is no bright line rule as to what constitutes unduly suggestive temporal proximity."); see Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (collecting cases finding unduly suggestive temporal proximity ranging from two days to three weeks); cf. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding temporal proximity not unduly suggestive where three weeks elapsed between protected activity and adverse employment action); Kier v. F. Lackland & Sons, LLC, No. CIV.A. 14–897, 2014 WL 7192403, at *17 (E.D. Pa. Dec. 17, 2014) ("Absent some intervening antagonism, Plaintiff

cannot rest solely on a temporal proximity of more than one week."). Moreover, the Third Circuit has cautioned that, "the amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003).

Accordingly, the Court finds that Plaintiff has sufficiently plead the causal connection element of his ADA retaliation claim, and Defendant's motion to dismiss Count II of the FAC will be denied.

### C. COUNT V: FMLA Retaliation

Defendant also moves to dismiss for failure to state a claim for FMLA retaliation. To state a claim under the FMLA, a plaintiff must show, "that (1) he [or she] took an FMLA leave, (2) he [or she] suffered an adverse employment decision, and (3) the adverse decision was causally related to his [or her] leave." Calero v. Cardone Indus., Inc., No. CIV.A. 11-3192, 2012 WL 2547356, at *6 (E.D. Pa. June 29, 2012) (Baylson, J.) (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004) holding modified by Erdman v. Nationwide Ins. Co., 582 F.3d 500 (3d Cir. 2009)). Defendant argues Plaintiff failed to allege facts that show he was an "eligible employee" pursuant to the FMLA, (Def.'s Mot. at 15), and failed to allege a causal connection existed between his request for FMLA leave and his termination. (Id.).

First, it is beyond dispute that Plaintiff was an "eligible employee" under the FMLA because he was granted FMLA leave. (FAC ¶ 20); see also Calero, 2012 WL 2547356, at *6 ("An "eligible employee" under the FMLA is entitled to leave, if he or she has a serious health condition that makes [him or her] unable to perform the functions of [his or her] position.").

11

As for retaliation, the analysis for FMLA retaliation is identical to that for ADA retaliation, see supra, IV.B, and applies with equal force here.

Accordingly, Plaintiff has adequately alleged an FMLA retaliation claim.[4]

### D. COUNT VI: Wrongful Discharge

Finally, Defendant moves to dismiss Plaintiff's wrongful discharge claim. While Pennsylvania usually does not recognize a cause of action for the wrongful discharge of an at-will employee, it recognizes two exceptions: (1) where the discharge violates clear mandates of public policy, or (2) where the discharge is intended specifically to cause harm. Foley v. Presbyterian Ministers' Fund, 749 F. Supp. 109, 111 (E.D. Pa. Sept. 17, 1990) (citing Geary v. U. S. Steel Corp., 456 Pa. 171, 177, 319 A.2d 174, 177 (1974)). As Plaintiff notes, courts in this District have found that—notwithstanding the fact that the public policy exception is a narrow one—the public policy exception can extend to protect employees who have been terminated after expressing an *intent* to file workers' compensation claims, in addition to those employees who actually have filed workers' compensation claims. See Smith v. R.R. Donnelley & Sons Co., 10-cv-1417, 2011 WL 4346340, at *4-6 (E.D. Pa. Sept. 16, 2011) (discussing Pennsylvania Supreme Court precedent, and finding that the public policy exception does extend to instances where "injured employees who have expressed their intent to pursue workers compensation claims" and noting that "this conclusion aligns with the public policy and is in keeping with the narrow interpretation of this exception to the at-will employment doctrine.").

---

[4] The Court finds that Plaintiff has also adequately stated a claim for retaliation under the PHRA (Count IV) because the analyses are identical. See Sherrod v. Philadelphia Gas Works, 209 F. Supp. 2d 443, 451 (E.D. Pa. Mar. 29, 2002), aff'd, 57 Fed. App'x 68 (3d Cir. 2003) (holding that retaliation claims under the FMLA and PHRA are analyzed under the same framework).

Defendant argues, however, that Plaintiff's wrongful discharge claim fails because Plaintiff did not actually *file* a worker's compensation claim, so his termination did not follow "protected activity" and therefore could not violate public policy. (Def.'s Mot. at 17).

Plaintiff contends that his allegations are sufficient to state a claim for wrongful discharge based on a public policy exception, under Pennsylvania law, because when he arrived at the emergency room, he notified hospital personnel that his injury was work related and they subsequently completed a Worker's Compensation Injury Report. (FAC ¶ 17; Pl.'s Opp'n at 14). Additionally, Plaintiff alleged that after he left the hospital, he also informed Kriescher, Trivuiano, and Durham that (1) he had notified hospital personnel that his injury was work related, and (2) he intended to file a claim for worker's compensation benefits. (FAC ¶ 20; Pl.'s Opp'n at 15).

Based on the facts alleged in the FAC regarding Plaintiff's intent to file a worker's compensation claim, and the reasoning in Smith, 2011 WL 4346340, at *6, the Court is adequately persuaded, at this time, that Plaintiff has alleged enough to state a claim for wrongful discharge under Pennsylvania law, based on the public policy exception to general at-will employment laws.

## V. Conclusion

For the foregoing reasons, Defendant's motion will be GRANTED as to Counts I and III, and DENIED as to Counts II, IV, V, and VI. An appropriate Order follows.

O:\Jessica.2016\17-cv-1360, Worthington v. Chester Downs\Memo Re Motion to Dismiss.docx